No. 33,247

MERTIE L. HILDYARD, *Appellee*, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Appellant*.

(64 P. 2d 7)

198

Opinion filed January 23, 1937.

*Leonard S. Ferry, Frank E. Miller,* both of Topeka, *Mark H. Adams,* of Wichita, and *Frederick L. Allen,* of New York, N. Y., for the appellant.

*Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott* and *George Stallwitz,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action upon an insurance policy on the life of the husband of plaintiff. Judgment was for plaintiff, sustaining a demurrer to the answer of defendant. Defendant appeals.

On June 13, 1933, defendant issued an insurance policy to insured. Plaintiff was named beneficiary in that policy. According to the terms of the policy a premium of $39.48 became due on June 13, 1934. The policy also provided for a grace period of thirty-one days after the due date of the premium within which the premium might be paid without interest.

Within thirty days prior to June 13, 1934, the defendant mailed in an envelope properly addressed to insured a notice stating when the premium would fall due and the amount thereof, and of its intention to cancel the policy if the premium should not be paid within the period of grace or before July 13, 1934.

The insured failed to pay the premium of $39.48 on June 13, 1934, the date when it was due. On July 6, 1934, he requested defendant to grant to him an extension of one month within which payment of the premium might be made. On that date defendant sent an extension agreement to insured to be executed and returned to the company for its approval with an extension fee of $3.29. Instructions were that this extension agreement should be executed and returned to the company by July 13, 1934. This was not done. The extension agreement and the fee did not reach defendant until four days after that date. Notwithstanding this, the company on July 17, 1934, received a check for $3.29 and the extension agreement, which it executed on that date. This agreement granted to the insured until August 13, 1934, within which to pay the annual premium on his policy. The fact that the extension agreement reached the company four days late has no bearing on this case.

The extension agreement provided that if the insured failed to pay the premium by August 13, 1934, the policy would lapse as of the due date, that is, June 13, 1934. The agreement also provided

that the extension fee was not to be considered as a payment in part of the premium, but that if payment of the premium, together with interest at five percent, was made on or before August 13, 1934, the extension fee would be returned to insured by defendant.

On August 4, 1934, defendant notified insured that the last day for payment of the past due premium was August 13, 1934, and that if payment of the amount due under the extension agreement was not made in time it would be necessary for the insured to furnish the company with satisfactory evidence of good health.

On August 13, 1934, the insured sent to the defendant a check in the amount of $26.82, which amount, after applying the amount of the extension fee and the annual dividend, was the amount remaining unpaid on the overdue premium. This check was protested and returned to defendant marked "unpaid for want of funds" on August 17, 1934.

On August 21, 1934, defendant notified insured that the check had been returned unpaid on account of insufficient funds and that the policy stood lapsed.

On September 12, 1934, defendant received from the plaintiff a check for $28.82 tendered by the plaintiff in payment of the overdue premium and a protest charge. No evidence showing the health of insured was ever furnished. This check was held in a suspense account to await receipt of the insured's application for reinstatement and evidence of his insurability. These were never received.

On September 19, 1934, insured died. On September 29, 1934, defendant tendered to plaintiff the sum of $28.82 as the proceeds of plaintiff's check of September 12, 1934.

This tender was not accepted. The company denied liability, and this action was begun to recover the amount of the policy.

The company filed an answer setting out the facts about as they have been detailed here. The plaintiff demurred to the answer on the ground that it did not state facts sufficient to constitute any defense to the cause of action stated in the petition. This demurrer was sustained, hence this appeal.

The position of plaintiff is that when the extension agreement was executed the due date of the premium on the policy was changed from June 13, 1934, to July 13, 1934, and insured gained by reason of the grace period in the policy and of the extension agreement the right to pay the premium within thirty-one days after July 13, 1934. Plaintiff argues that in order to cancel the policy a notice had to be

sent insured by defendant not more than thirty days prior to July 13, notifying him that if the premium was not paid within thirty-one days after July 13 the policy would be canceled.

Plaintiff relies on R. S. 1933 Supp. 40-410 and 40-411 and the opinion of this court in *Hammond v. Illinois Bankers Life,* 142 Kan. 268, 46 P. 2d 626, to sustain this position.

R. S. 1933 Supp. 40-410 provides that it shall be unlawful for any life insurance company to cancel any policy of life insurance on account of nonpayment of any premium within six months after default, without giving a proper notice in writing of the company's intention to cancel.

R. S. 1933 Supp. 40-411 provides as follows:

"Before any such cancellation of forfeiture can be made for the nonpayment of any such premium the insurance company shall notify the insured under any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such insured shall have the right, at any time within thirty days after such notice has been duly deposited in the post office, postage prepaid, and addressed to such insured to the address last known by such company, to pay such premium: *Provided,* That in lieu of the notice hereinbefore provided, in the case of policies providing for a period of grace of not less than thirty days, or one month, for the payment of premiums and containing any provision for cancellation or forfeiture in case of nonpayment of premiums at the end of such period, the insurance company may, not more than thirty days prior to the date specified in such policy when any premium will become due and payable without grace, in like manner notify the insured under any such policy, of the date when such premium will fall due, stating the amount thereof, and its intention to forfeit or cancel the same if such premium be not paid within the period of grace provided in the policy; and any attempt on the part of such insurance company, within six months after default in the payment of any premium, to cancel or forfeit any such policy without the notice herein provided shall be null and void. The affidavit of any responsible officer, clerk or agent of the corporation authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be prima facie evidence that such notice has been duly given."

The original notice in this case complied with the last portion of the above section. The argument of plaintiff is that when the premium extension agreement took effect the company, pursuant to the terms of the above statute, was compelled to give another thirty-days notice in order to cancel the policy. If this position be sound, since no such notice was given, the policy was still in force when the good check for the amount of the premium was given on September 12.

The case of *Hammond v. Illinois Bankers Life,* supra, does not have quite the force urged for it by plaintiff. This court considered the Hammond case in *Brown v. Illinois Bankers Life Assur. Co.,* 144 Kan. 670, 63 P. 2d 165. In that case the plaintiff urged and the trial court held that in the Hammond case where an extension agreement was entered into the policy would not lapse until due notice of intent to forfeit was given after the extension agreement became due. The notice referred to was that provided by R. S. 1933 Supp. 40-411. In dealing with that contention this court said:

"The Hammond case presented only an issue of whether, under the facts in that case, there could be recovery on behalf of insured when the insured died within the period of the extension agreement." (p. 674.)

For the reason given in the Brown case, we hold that the holding in the Hammond case does not control the decision in this case.

The defendant in this case relies upon the provisions in R. S. 1933 Supp. 40-416. That section is as follows:

"A life insurance company may enter into subsequent agreements in writing with the insured, which need not be attached to the policy, to extend the time for the payment of any premium, or part thereof, upon condition that failure to comply with the terms of such agreement shall lapse the policy as provided in said agreement. Subject to such lien as may be created to secure any indebtedness contracted by the insured in consideration of such extension, said agreement shall not impair any right existing under the policy."

Clearly the premium extension agreement in this case provided by its own terms for the cancellation of the policy upon failure to pay the premium on July 13, 1934. If the company had the right to make such an agreement, then the position of defendant in this case is sound. In considering a similar situation in *Brown v. Illinois Bankers Life Assur. Co.,* supra, this court said:

"We might also say the words actually employed in R. S. 1933 Supp. 40-416 quite clearly disclose its intent and purpose. It must be assumed the legislature knew of the former statutes providing for grace periods and notices of forfeiture. When it framed the 1927 insurance code it retained in amended form the forfeiture provisions, R. S. 1933 Supp. 40-410 and 40-411. It went further, however, and made provision for a contract to supplement all of these provisions, and hence we now have R. S. 1933 Supp. 40-416. It expressly provides the condition upon which a subsequent agreement may be made, to wit: '. . . upon condition that failure to comply with the terms of such agreement shall lapse the policy as provided in said agreement.' This statute either means what it says or it means nothing. It does not say, 'shall lapse the policy as provided by the policy,' or 'shall be forfeited as provided by previous sections of this act,' but it expressly says, 'shall lapse the policy as provided in said agreement.' Now, this subsequent agreement gave in-

sured thirty days, in addition to the grace period allowed in the policy. We cannot now arbitrarily brush aside the later enactment providing for subsequent agreements and also the extension agreement made pursuant thereto, as constituting futile gestures." (p. 675.)

We have concluded that the opinion of this court in *Brown v. Illinois Bankers Life Assur. Co.* is conclusive of the points argued in this appeal and that the demurrer of plaintiff to the answer of defendant should have been overruled.

The judgment of the trial court is reversed with directions to overrule the demurrer of plaintiff to the answer of defendant and to render judgment for defendant.

HARVEY, J., dissenting.